# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

FILED
CLERKS OFFICE

2005 FEB 15 P 12: 43

U.S. DISTRICT COURT
DISTRICT OF MASS

\* \* \* \* \* \* \* \* \* 05 10333 MLW

NORTH AMERICAN INDUSTRIES, INC    \*    Case No.:

        Plaintiff, \*
       MAGISTRATE JUDGE

     v.        \*

           \*

CALIBER ONE INDEMNITY COMPANY    \*
           Defendant.    \*
           \*

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

RECEIPT #_____
AMOUNT $_____
SUMMONS ISSUED ✓
LOCAL RULE 4.1 _____
WAIVER FORM _____
MCF ISSUED _____
BY DPTY. CLK. _____
DATE _____

**COMPLAINT**

1. The Plaintiff, North American Industries, Inc., at all relevant times hereto was a Massachusetts corporation with a principle place of business at 18 Holton Street, Woburn, Massachusetts where it designs and manufactures industrial cranes.

## JURISDICTION AND VENUE

2. This court has jurisdiction over this matter pursuant to 28 U.S.C §1332(a)(1) because the action is between citizens of different states and the amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs.

3. Venue is proper in this district pursuant to 28 U.S.C. §1391(a)(2) because a substantial part of the events which gave rise to this action occurred in this district as well as many of the witnesses can be found in this district and the defendant issued a policy of insurance to Plaintiff in this District and is licensed to sell insurance policies in the Commonwealth of Massachusetts.

4. Defendant, Caliber One Indemnity Company, ("Caliber"), is an

insurance carrier with a place of business at 1040 Stony Hill Road, Yardley, Pennsylvania.

FACTUAL ALLEGATIONS

5. Effective on August 5, 2001 through August 5, 2002 Caliber issued NAI an insurance policy No. GPC 0001005-03 providing Comprehensive General Liability and Professional Liability Insurance Coverage (hereinafter "The Policy").

6. NAI at all relevant times to this Complaint was engaged in the business of heavy-duty crane design and manufacturing.

7. The Policy Provides professional liability coverage, effective retroactively back to August 5, 1998 and includes a duty to defend and indemnify NAI against claims made for errors or omissions in NAI's rendering of professional services of crane design and manufacturing. (A true and accurate copy of The Policy is attached hereto as Exhibit A).

8. In February of 2001, NAI contracted with L.G. DeFelice/FKCI, J.V. and L.G. DeFelice, Inc., both of 30 Bernhard Road, North Haven, Connecticut (hereinafter "DeFelice"), to design, manufacture and deliver two heavy-duty cranes for use at a highway construction project for the Connecticut Department of Transportation to re-build a portion of Interstate 95 in Bridgeport, Connecticut.

9. On or about May 13, 2004, DeFelice served NAI with a complaint now pending in the Connecticut Superior Court of New Haven at New Haven as docket #04-0490242-S, captioned L.G.DeFelice/FKCI, J.V., et al v. North American Industries, Inc., a copy of which is attached hereto as Exhibit B (hereinafter "The Suit").

10. In The Suit, DeFelice claims monetary damages, interest, costs

and expenses, attorney's fees and other equitable relief for, inter alia, "delivering the cranes with defective and/or improper parts and equipment" and "providing equipment that did not meet the applicable safety regulations".

11. Prior to serving The Suit upon NAI, DeFelice corresponded with NAI explaining the basis for its claims against NAI being rooted in negligent design of the cranes.

12. On June 20, 2001 DeFelice wrote to NAI and stating: "while the cause of the failure has not been confirmed yet, it is the opinion of our field personnel that the electric travel motors are undersized."

13. On June 21, 2001 DeFelice wrote a letter to NAI saying of the crane: "the lackadaisical manner with which you are attempting to resolve your **_design deficiencies_** is inexcusable"……"It is imperative that you take action to correct **_the design deficiencies_** immediately" (emphasis added).

14. On June 28, 2001 DeFelice wrote to NAI regarding the cranes: "it was your company's belief that the gear ratio was incorrect" and "the engineering performed by your firm during the design process was flawed…..the question will remain as to whether or not the integrity and longevity of the desired design was sacrificed".

15. In accordance with The Policy and in a timely fashion, NAI provided Caliber with copies of the correspondence between

DeFelice and NAI identified in paragraphs 12, 13 and 14 above, along with a copy of the Complaint for The Suit.

16. At all relevant times hereto, NAI was in compliance with all of the terms of and all of its responsibilities under The Policy.

17. In accordance with The Policy, NAI requested in writing Caliber provide NAI with both a defense in The Suit and indemnification for any damages sought by DeFelice in The Suit.

18. Despite NAI's request for a defense and indemnification, Caliber has wrongfully denied the request in total and has to date refused, failed and neglected to provide a defense to The Suit.

19. As a result of Caliber's denial of coverage, indemnity and the duty to defend, NAI has been caused harm in that it has undertaken the defense of The Suit at its own expense.

20. NAI has employed attorneys to represent it in both this action and The Suit and has incurred and will incur expenses for attorney's fees and costs in connection therewith.

**WHEREFORE**, the Plaintiff prays:

1. For a declaration that Caliber One must provide NAI with a full defense to The Suit and must indemnify NAI for any damages resulting therefrom and the costs of this suit.

2. Monetary damages.

3. For attorney's fees and costs, and for such other and further relief as the court may deem proper.

Dated at       *Bosm*       , Massachusetts this //² day of

February, 2005.


RESPECTFULLY, NORTH AMERICAN INDUSTRIES, INC.

BY *Michael Theodore*

   Michael Theodore, Esq., BBO #565098
   Cohn & Dussi LLC
   25 Burlington Mall Road, 6th Floor
   Burlington, MA 01803-4158
   (781)494-0200/(781)494-0208 fax

   mtheodore@cohnanddussi.com

and

BY *Keith Ainsworth (by mail)*

   Keith R. Ainsworth, Esq.
   Evans, Feldman & Boyer, L.L.C.
   261 Bradley Street
   P.O. Box 1694
   New Haven, CT 06507-1694
   Tel:(203)772-4900
   Fax:(203)782-1356
   Fed Bar #ct08118
   krainsworth@snet.net

   its Attorneys

Exhibit A



# Indemnity Company

## Insurance Policy in Behalf of North American Industries



FRED C. CHURCH

INSURANCE

...an Assurex Partner

Caliber One Indemnity Company
Lower Makefield Corporate Center
1040 Stony Hill Road
Yardley, Pennsylvania 19067

# The Caliber One Privacy Policy

Insurance companies routinely obtain a variety of information provided by customers, agents and brokers, various claimants, medical providers, and other third parties. It is the policy of Caliber One Indemnity Company and Caliber One Management Company ("Caliber One") to maintain an appropriate level of confidentiality for all the information we collect by restricting access to that information. We also maintain appropriate physical, electronic, and procedural safeguards to protect such information from unauthorized access.

## The business of insurance requires information.
Insurance companies cannot effectively provide insurance services unless they are given access to and are able to process different kinds of information. For example, underwriters cannot evaluate individual risks without information regarding the individual insured's loss experience, safety practices, and so forth; and claims cannot be administered without information regarding the nature and extent of the injury or damage incurred, including relevant medical information.

Much of the information we obtain is public and not of a personal or sensitive nature. We believe that those who entrust us with nonpublic personal information do so with the reasonable expectation that we will use the information only for the limited purpose for which we obtain it; i.e., for insurance related purposes. We are concerned about protecting the privacy of our customers and the other individuals with whom we interact, and have taken steps to protect the confidentiality of the nonpublic personal information that we obtain.

## Types and sources of information.
Caliber One accumulates information from many sources.

- Customers provide us with information we need as part of the insurance application or evaluation process. We may also request reports from various sources in connection with applications for insurance and/or any renewal of such insurance. The kind of information we collect depends upon the type of policy, but may include such things as automobile motor vehicle reports, loss and claim reports, risk management reports, financial rating reports and property inspections, and other information. We also may receive and verify information from government agencies or independent reporting companies to help us correctly rate and properly underwrite a particular insurance risk.

- We maintain detailed claim files which contain information about the claim and the claimant, including accident reports, wage information, medical reports bearing on the claim, and evidence relating to the validity or eligibility of the claim. We obtain such information from claimants, their employers, their medical providers, and other generally reliable sources. We cannot administer claims or pay benefits without appropriate access to such information.

## Medical information.
Caliber One obtains personally identifiable medical information only in connection with underwriting specific insurance policies or administering claims under those policies. We will not use or share with third parties personally identifiable medical information for any purpose other than the underwriting or administration of a policy, claim, account or program, or as otherwise disclosed to the subject when the information is collected, except as may be permitted by applicable law.

**Our use of customer information.** Caliber One's policy is to limit access to nonpublic personal information to those who need it in order to serve our own and our customers' insurance business needs, to administer claims and to maintain and improve customer service. We do not disclose nonpublic personal information to third parties except as necessary to conduct business, e.g., processing claims, or as permitted or required by law. In particular, we do not buy or sell nonpublic personal information, although we may acquire or transfer such information in connection with the acquisition or sale of companies or books of business.

**Records retention.** Caliber One retains the information it has collected for various periods established by the records retention policies of the company.

**Who has access to the information.** Except as permitted or required by law, we will not disclose nonpublic personal information about a person without that person's consent. We may, without prior permission but only to the extent permitted by law, provide information contained in our records and files to certain persons or organizations which are fundamental to the insurance services we provide, such as:

- Our customers, and their independent agents or brokers;
- Our affiliated property and casualty insurance companies;
- Independent claim adjusters, medical examiners, vocational counselors, attorneys or investigators, when appropriate;
- Companies that provide insurance related services to or on the behalf of Caliber One, such as claim administration, medical review or treatment, and pharmacy network services;
- Persons or organizations that conduct research for or on behalf of the insurance industry, including actuarial or underwriting studies;
- Insurance support or rating organizations or, at our customers' or their agents' or brokers' request, other insurers; and
- To appropriate entities as necessary to prevent fraud or to properly underwrite a risk.

Also, on some occasions, we may be required to share this information:

- With state insurance departments or other governmental agencies, to the extent required by federal, state or local laws;
- If ordered by a summons, court order, search warrant or subpoena; or
- To protect our own legal interests, or in case of suspected fraud or other illegal activities.

**Notification of changes.** This privacy policy statement may be modified from time to time. If we decide to change our privacy policy, we will post those changes on our website at www.caliber-one.com.



**CALIBER One Indemnity Company**

Policy Declarations – Continued

Policy Number: GPC 0001005-03

---

**SCHEDULE OF FORMS AND ENDORSEMENTS MADE PART OF THIS POLICY AT INCEPTION:**

| | |
|---|---|
| COI.P017 (5/1/1998) | Commercial General Liability & Professional Liability Coverage Form – Claims-Made |
| COI.E193A (7/1/2001) | Self-Insured Retention |
| COI.E17 (1/1/1998) | Amendatory Endorsement - Blank Form |
| COI.E115 (2/1/1999) | Exclusion - Date Related Computer And Other Electronic Problems |
| COI.E68 (10/1/1999) | Service of Suit |
| COI.E112 (7/1/2000) | Minimum Earned Premium Endorsement |
| COI.E89 (7/1/1998) | Amendment- Notice of Cancellation |
| COI.E35 (4/1/1999) | Exclusion - Lead |
| COI.E195 (5/1/1999) | Designated Professional Services |

---

**DEDUCTIBLE:**

Applies to General Liability:    $100,000.00 SIR Per Claim Including Loss Adjustment Expense

Applies to Professional Liability:    $100,000.00 SIR Per Claim Including Loss Adjustment Expense

---

| **CLASSIFICATION** | **EXPOSURE BASE** | **TOTAL EXPOSURE** |
|---|---|---|
| 56652 | $8.85 per 1,000 Gross Receipts | 13,000,000 Gross Receipts |

**TOTAL DEPOSIT PREMIUM:**    $115,000 Plus Taxes
**TOTAL MINIMUM PREMIUM:**    $115,000

---

AUTHORIZED REPRESENTATIVE

# C A L I B E R *One*

## Indemnity Company

## *POLICY DECLARATIONS*

**POLICY NUMBER: GPC 0001005-03**  **RENEWAL OF: GPC 0001005-02**

**NAMED INSURED AND MAILING ADDRESS:**  **BROKER:**

North American Industries
80 Holton Street
Woburn, MA 01801

Swett & Crawford
Two Wall Street
Tenth Floor
New York, NY 10005

**POLICY PERIOD:**

**FROM:** 8/5/2001  **TO:** 8/5/2002  AT 12:01 A.M. STANDARD TIME AT THE MAILING ADDRESS SHOWN ABOVE

**FORM OF BUSINESS:** Corporation

## *Commercial General Liability & Professional Liability Coverage Form – Claims-Made*

**LIMITS OF INSURANCE:**
   **General Liability**
      $1,000,000  Each Occurrence
      $2,000,000  General Aggregate
      $1,000,000  Personal And Advertising Injury
      $2,000,000  Products - Completed Operations Aggregate
      $50,000  Fire Damage Limit
   **Professional Liability**
      $1,000,000  Each Claim
      $2,000,000  Professional Aggregate

**RETROACTIVE DATES:**
      8/5/1986 Applicable to coverage(s):
         General Liability
      8/5/1998 Applicable to coverage(s):
         Professional Liability

   This insurance does not apply to "Bodily Injury", "Property Damage", "Personal Injury" or "Advertising Injury" which occurs before the retroactive date(s), if any, shown above

## Common Policy Conditions
**All Coverage Parts included in this policy are subject to the following conditions:**

### A) CANCELLATION

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.
2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:
   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or
   b. 60 days before the effective date of cancellation if we cancel for any other reason.
3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.
4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.
5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.
6. If notice is mailed, proof of mailing will be sufficient proof of notice.

### B) CHANGES

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

### C) EXAMINATION OF YOUR BOOKS AND RECORDS

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

### D) INSPECTIONS AND SURVEYS

We have the right but are not obligated to:
1. Make inspections and survey at any time;
2. Give you reports on the conditions we find; and
3. Recommend changes.

Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:
1. Are safe or healthful; or
2. Comply with laws, regulations, codes or standards.

This condition applies not only to us, but also to any rating, advisory, rate service or similar organization that makes insurance inspections, surveys, reports or recommendations.

### E) PREMIUMS

The first Named Insured shown in the Declarations:
1. Is responsible for the payment of all premiums; and
2. Will be the payee for any return premiums we pay.

### F) TRANSFER OF YOUR RIGHTS AND DUTIES UNDER THIS POLICY

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

IN WITNESS WHEREOF, Caliber One Indemnity Company has caused this policy to be signed by its President and Secretary at Yardley, Pennsylvania, but it is not binding unless signed on the Declarations Page by our Authorized Representative.

Secretary                              President

# COMMERCIAL GENERAL LIABILITY
# AND
# PROFESSIONAL LIABILITY COVERAGE FORM

## COVERAGES A, B AND P PROVIDE CLAIMS - MADE COVERAGE.
## PLEASE READ THE ENTIRE FORM CAREFULLY.

## THE LIMITS OF INSURANCE PROVIDED UNDER COVERAGE P
## INCLUDE DEFENSE COSTS.

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to Caliber One Indemnity Company.

The word "insured" means any person or organization qualifying as such under WHO IS AN INSURED (SECTION II).

Other words and phrases that appear in quotation marks have special meaning. Refer to DEFINITIONS (SECTION VI).

## SECTION I - COVERAGES

## COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1.  **Insuring Agreement.**

    A.  We will pay those sums that the insured becomes legally obligated to pay as "damages" because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those "damages" However, we will have no duty to defend the insured against any "suit" seeking "damages" for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

        (1)  The amount we will pay for "damages" is limited as described in LIMITS OF INSURANCE (SECTION III); and

        (2)  Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B.

        No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS - COVERAGES A, B AND P.

    B.  This insurance applies to "bodily injury" and "property damage" only if:



(1)     The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

(2)     The "bodily injury" or "property damage" did not occur before the Retroactive Date shown in the Declarations or after the end of the policy period; and

(3)     A claim for "damages" because of the "bodily injury" or "property damage" is first made against any insured, in accordance with Paragraph C. below, during the policy period or any Extended Reporting Period we provide under EXTENDED REPORTING PERIODS (Section V).

C.      A claim by a person or organization seeking "damages" will be deemed to have been made at the earlier of the following times:

(1)     When notice of such claim is received and recorded by any insured or by us, whichever comes first; or

(2)     When we make settlement in accordance with Paragraph 1.A. above.

All claims for "damages" because of "bodily injury" to the same person, including damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury" will be deemed to have been made at the time the first of those claims is made against any insured.

All claims for damages because of "property damage" causing loss to the same person or organization will be deemed to have been made at the time the first of those claims is made against any insured.

## 2.   Exclusions.

This insurance does not apply to:

A.      "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

B.      "Bodily injury" or "property damage" for which the insured is obligated to pay "damages" by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for "damages":

(1)     That the insured would have in the absence of the contract or agreement; or

(2)     Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be "damages" because of "bodily injury" or "property damage", provided:

        **a.**     Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

        **b.**     Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which "damages" to which this insurance applies are alleged.

**C.**     "Bodily injury" or "property damage" for which any insured may be held liable by reason of:

     **(1)**     Causing or contributing to the intoxication of any person;

     **(2)**     The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

     **(3)**     Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

     This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

**D.**     Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**E.**     "Bodily injury" to:

     **(1)**     An employee of the insured arising out of and in the course of employment by the insured; or

     **(2)**     The spouse, child, parent, brother or sister of that employee as a consequence of (1) above.

     This exclusion applies:

     **(1)**     Whether the insured may be liable as an employer or in any other capacity; and

     **(2)**     To any obligation to share "damages" with or repay someone else who must pay "damages" because of the injury.

     This exclusion does not apply to liability assumed by the insured under an "insured contract".

**F.**     **(1)**     "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants:

        **a.**     At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured;

b.    At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage disposal, processing or treatment of waste;

c.    Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or any person or organization for whom you may be legally responsible; or

d.    At or from any premises, site or location which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations:

    (i)    if the pollutants are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor; or

    (ii)    if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants.

Subparagraph (d) (i) does not apply to "bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the fuels, lubricants or other operating fluids are intentionally discharged, dispersed or released, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent to be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor.

Subparagraphs (a) and (d) (i) do not apply to "bodily injury" or "property damage" arising out of heat, smoke or fumes from a hostile fire.

As used in this exclusion, a hostile fire means one which becomes uncontrollable or breaks out from where it was intended to be.

(2)    Any loss, cost of expense arising out of any:

a.    Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or

b.    Claim or suit by or on behalf of a governmental authority for "damages" because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

G.  "Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion does not apply to:

(1)  A watercraft while ashore on premises you own or rent;

(2)  A watercraft you do not own that is:

    a.  Less than 26 feet long; and

    b.  Not being used to carry persons or property for a charge;

(3)  Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

(4)  Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

(5)  "Bodily injury" or "property damage" arising out of the operation of any of the equipment listed in Paragraph f.(2) or f.(3) of the definition of "mobile equipment" (Section VI.10.).

H.  "Bodily injury" or "property damage" arising out of:

(1)  The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

(2)  The use of "mobile equipment" in, or while in practice or preparation for, a prearranged racing, speed or demolition contest or in any stunting activity.

I.  "Bodily injury" or "property damage" due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

J.  "Property damage" to:

(1)  Property you own, rent or occupy;

(2)  Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

(3)  Property loaned to you;

(4)      Personal property in the care, custody or control of the insured;

(5)      That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6)      That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraph (2) of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products - completed operations hazard".

**K.**    "Property damage" to "your product" arising out of it or any part of it.

**L.**    "Property damage" to "your work" arising out of it or any part of it and included in the "products - completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**M.**    "Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1)      A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2)      A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**N.**    "Damages" claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1)      "Your product";

(2)      "Your work"; or

(3)      "Impaired property";

if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

O.  (1)  "Bodily injury" or "property damage" arising out of, resulting from, caused or contributed by asbestos or exposure to asbestos;

   (2)  The cost of abatement, mitigation, removal or disposal of asbestos;

   (3)  Any supervision, instruction, recommendations, warnings or advice given or which should have been given in connection with (1) and (2) above; and

   (4)  Any obligation to share "damages" with or repay someone else who must pay "damages" because of such "bodily injury" or "property damage".

P.  "Bodily injury" arising out of any:

   (1)  Refusal to employ;

   (2)  Termination of employment;

   (3)  Coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or other employment - related practices, policies, acts or omissions; or

   (4)  Consequential "bodily injury" as a result of (1) through (3) above.

This exclusion applies whether the insured may be held liable as an employer or in any other capacity and to any obligation to share "damages" with or to repay someone else who must pay "damages" because of the injury.

Q.  (1)  "Bodily injury" or "property damage":

     a.  With respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

     b.  Resulting from the "hazardous properties" of "nuclear material" and with respect to which (i) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (ii) the insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

(2)    "Bodily injury" or "property damage" resulting from the "hazardous properties" of "nuclear material", if:

    a.    The "nuclear material" (i) is at any "nuclear facility" owned by, or operated by or on behalf of, an insured or (ii) has been discharged or dispersed therefrom;

    b.    The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

    c.    The "bodily injury" or "property damage" arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America. its territories or possessions or Canada, this exclusion (c) applies only to "property damage" to such "nuclear facility" and any property thereat.

(3)    As used in this exclusion, the following definitions apply

    a.    "Hazardous properties" include radioactive, toxic or explosive properties;

    b.    "Nuclear material" means "source material", special nuclear material" or "by - product material";

    c.    "Source material", "special nuclear material", and "by - product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

    d.    "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor";

    e.    "Waste" means any waste material (i) containing "by - product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (ii) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

    f.    "Nuclear facility" means:

        (i)    Any "nuclear reactor";

        (ii)    Any equipment or device designed or used for (a) separating the isotopes of uranium or plutonium, (b) processing or utilizing "spent fuel", or (c) handling, processing or packaging "waste";

        (iii)    Any equipment or device used for the proceeding, fabricating or alloying of "special nuclear material" if at any time the total

amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

    (iv)   Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste"; and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

g.    "Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

h.    "Property damage" includes all forms of radioactive contamination of property.

R.    "Bodily Injury" or "property damage" arising out of the rendering or failure to render any "professional services" by or for you.

S.    "Bodily Injury" or "property damage" arising out of any claims for "damages" by any Named Insured against another Named Insured under this policy.

T.    "Bodily injury" or "property damage" arising out of an "occurrence":

    (1)    Disposed in your application of insurance or any accompanying documents provided to us; or

    (2)    You had knowledge of or information on, prior to the first inception date of continuous claims-made coverage with us, and which may result in a claim.

Exclusions c. through n. do not apply to damage by fire to premises rented to you. A separate limit of insurance applies to this coverage as described in LIMITS OF INSURANCE (SECTION III).

## COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY

1.    **Insuring Agreement.**

A.    We will pay those sums that the insured becomes legally obligated to pay as "damages" because of "personal injury" or "advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those "damages". However, we will have no duty to defend the insured against any "suit" seeking "damages" for "personal injury" or "advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" or offense and settle any claim or "suit" that may result. But:

(1)    The amount we will pay for "damages" is limited as described in LIMITS OF INSURANCE (SECTION III); and

(2)    Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS - COVERAGES A, B AND P.

B.    This insurance applies to:

(1)    "Personal injury" caused by an offense arising out of your business, excluding advertising, publishing, broadcasting or telecasting done by or for you; and

(2)    "Advertising injury" caused by an offense committed in the course of advertising your goods, products or services;

but only if:

a.    The offense was committed in the "coverage territory";

b.    The offense was not committed before the Retroactive Date shown in the Declarations or after the end of the policy period; and

c.    A claim for damages because of the "personal injury" or "advertising injury" is first made against any insured, in accordance with Paragraph C. below, during the policy period or any Extended Reporting Period we provide under EXTENDED REPORTING PERIODS (Section V).

(3)    A claim made by a person or organization seeking damages will be deemed to have been made at the earlier of the following times:

a.    When notice of such claim is received and recorded by any insured other than those listed in 2E. of SECTION II, WHO IS AN INSURED, or by us, whichever comes first; or

b.    When we make settlement in accordance with Paragraph 1.A. above.

All claims for damages because of "personal injury" or "advertising injury" to the same person or organization as a result of an offense will be deemed to have been made at the time the first of those claims is made against any insured.

2.    **Exclusions.**

This insurance does not apply to:

A.    "Personal injury" or "advertising injury":



(1)    Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity;

(2)    Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period;

(3)    Arising out of the willful violation of a penal statute or ordinance committed by or with the consent of the insured; or

(4)    For which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for "damages" that the insured would have in the absence of the contract or agreement.

(5)    Arising out of an offense disclosed in your application of insurance, or any accompanying documents provided to us, or, an offense you had knowledge of or information on, prior to the first inception date of continuous claims-made coverage with us, and which may result in a claim.

(6)    **a.**    Arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants:

        **b.**    Any loss, cost or expense arising out of any:

            **(i)**    Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or

            **(ii)**    Claim or suit by or on behalf of a governmental authority for "damages" because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

(7)    **a.**    Arising out of, resulting from, caused or contributed by asbestos or exposure to asbestos; or

        **b.**    The costs of abatement, mitigation, removal or disposal of asbestos.

        **c.**    Any supervision, instructions, recommendations, warnings or advice given or which should have been given in connection with a. and b. above; and

        **d.**    Any obligation to share "damages" with or repay someone else who must pay "damages" because of such "bodily injury" or "property damage".

(8)    Arising out of any claims for "damages" by any Named Insured against another Named Insured under this policy.

(9)  Arising out of the rendering or failure to render any "professional services" by or for you.

(10)  a.  To an employee of the insured arising out of and in the course of employment by the insured; or

b.  Arising out of any:

(i)  Refusal to employ;

(ii)  Termination of employment;

(iii)  Coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or other employment-related practices, policies, acts or omissions; or

(iv)  Consequential "personal injury" or "advertising injury" as a result of (i) through (iii) above.

Exclusions 10.(a) and (b) apply whether the insured may be held liable as an employer or in any other capacity and to any obligation to share "damages" with or repay someone else who must pay "damages" because of the injury.

B.  "Advertising injury" arising out of:

(1)  Breach of contract, other than misappropriation of advertising ideas under an implied contract;

(2)  The failure of goods, products or services to conform with advertised quality or performance;

(3)  The wrong description of the price of goods, products or services; or

(4)  An offense committed by an insured whose business is advertising, broadcasting, publishing or telecasting.

## COVERAGE P. PROFESSIONAL

1.  **Insuring Agreement**

A.  We will pay those sums that the insured becomes legally obligated to pay as "damages" because of any act, error or omission in the rendering or failure to render "professional services" by an insured or by any person for whose acts, errors or omissions an insured is legally responsible. We will have the right and duty to defend the insured against any "suit" seeking those "damages". However, we will have no duty to defend the insured against any "suit" seeking "damages" for a negligent act, error or omission to which this insurance does not apply. We may, at our discretion, investigate any act, error or omission and settle any claim or "suit" that may result. But:

    (1)    The amount we will pay for "damages" and Supplementary Payments is limited as described in LIMITS OF INSURANCE (Section III); and

    (2)    Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverage P and/or in the payment of sums under Supplementary Payments.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS - COVERAGES A, B. and P.

**B.**    This insurance applies to "damages" only if:

    (1)    The "damages" are caused by an act, error or omission that takes place in the "coverage territory"; and

    (2)    The act, error or omission did not occur before the Retroactive Date shoown in the Declarations or after the end of the policy period; and

    (3)    A claim for "damages" because of the rendering or failure to render "professional services" is first made against any insured, in accordance with Paragraph C. below, during the policy period or any Extended Reporting Period we provide under EXTENDED REPORTING PERIODS (Section V).

**C.**    A claim by a person or organization seeking "damages" will be deemed to have been made at the earlier of the following times:

    (1)    When notice of such claim is received and recorded by any insured or by us, whichever comes first; or

    (2)    When we make settlement in accordance with Paragraph 1.A. above.

All claims made during the "coverage period" and arising out of a single act, error or omission or a series of related acts, errors or omissions, shall be considered first made during the policy period or Extended Reporting Period in which the earliest claim arising out of such acts, errors or omissions or related acts, errors or omissions was first made, and all such claims shall be subject to the limit of insurance stated in the Declarations of the Policy which applies to such earliest claim.

**2.**    **Exclusions**

This insurance does not apply to:

**A.**    Any civil, criminal or administrative fines or penalties levied against an insured or any subcontractor working on behalf of the insured.

**B.**    "Bodily injury", "property damage", "advertising injury" or "personal injury", except arising out of a negligent act, error or omission in the rendering or failure to render "professional services" by or for you.

C.     Any claim resulting from an actual or alleged failure to prepare or provide designs, drawings, estimates, plans, specifications, studies, or surveys in a timely manner or within a prescribed period of time.

D.     Any claims arising out of knowingly non complying with federal, state and local statutes.

E.     Any claim based upon or arising out of any dishonest, fraudulent, malicious or knowingly wrongful act or omission committed by or at the direction of the insured.

F.     Liability arising out of the insured's services and/or capacity as:

    (1)     an officer, director, partner, trustee or employee of a business enterprise not named in the Declarations;

    (2)     an officer, director, partner, trustee or employee of a charitable organization or pension, welfare, profit sharing, mutual or investment fund or trust;

    (3)     a fiduciary under the Employee Retirement Income Security Act of 1974 and its amendments or any regulation or order issued pursuant thereto or any other employee benefit plan.

G.     To any claim made by any business enterprise which is operated or managed or owned, in whole or in part, by the insured or their parent company or any of their affiliated, subsidiary or associated companies.

H.     To any claim based upon or arising out of discrimination by the insured on the basis of age, color, race, sex, creed, national origin, marital status, sexual orientation handicap status or disability.

I.     To any claim arising out of the insured's inability to complete jobs as a result of its bankruptcy or insolvency.

J.     To any loss or claim based upon or arising out of a violation or alleged violation of the Securities Act of 1933 as amended or the Securities Exchange Act of 1934 as amended or any state blue sky or securities law or similar state or federal statute and any regulation or order issued pursuant to any of the foregoing statutes, unless endorsed herein.

K.     To the liability of others assumed by the insured under any contract or agreement, unless such liability would have attached to the insured even in the absence of such agreement.

This exclusion does not apply to "bodily injury" to:

    (1)     An employee of the insured arising out of and in the course of employment by the insured; or

    (2)     The spouse, child, parent, brother or sister of that employee as a consequence of (1) above.

L.   Any claim resulting from advice rendered or failed to have been rendered with respect to any bond, suretyship, or insurance requirement.

M.   Any claim resulting from estimates of probable contract costs being exceeded; express warranties or guarantees; or breach of contract as respects any agreement to perform work for a specified fee.

N.   Any obligation of the insured under a workers compensation, disability benefits or unemployment compensation law or any similar law.

O.   "Damages" arising out of "bodily injury" to:

   (1)   An employee of the insured arising out of and in the course of employment by the insured; or

   (2)   The spouse, child, parent, brother or sister of that employee as a consequence of (1) above.

This exclusion applies:

   (1)   Whether the insured may be liable as an employer or in any other capacity; and

   (2)   To any obligation to share "damages" with or repay someone else who must pay "damages" because of the injury.

This exclusion does not apply to liability of others assumed by the insured under any contract or agreement if such liability would have attached to the insured even in the absence of such contract or agreement.

P.   "Damages" to an employee of the insured arising out of and in the course of employment by the insured.

This exclusion applies whether the insured may be held liable as an employer or in any other capacity and to any obligation to share "damages" with or repay someone else who must pay "damages" because of the injury.

Q.   "Damages" arising out of any:

   (1)   Refusal to employ;

   (2)   Termination of employment;

   (3)   Coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or other employment - related practices, policies, acts or omissions; or

   (4)   Consequential "bodily injury" as a result of (1) through (3) above.

This exclusion applies whether the insured may be held liable as an employer or in any other capacity and to any obligation to share "damages" with or to repay someone else who must pay "damages" because of the injury.

R.  Any claim arising out of the ownership, rental, leasing, maintenance, operation, use, or repair of any real or personal property, including damage to property owned, occupied or used by or rented or leased to an insured.

S.  Any claim arising out of the ownership, entrustment, leasing, rental, maintenance, operation, loading or unloading or use of watercraft, automobiles, motor vehicles, aircraft, rolling stock, or mobile vehicles of any kind.

T.  "Damages" arising out of an act, error or omission:

   (1)  Disclosed in your application of insurance or any accompanying documents provided to us; or

   (2)  You had knowledge of or information on, prior to the first inception date of continuous claims-made coverage with us, and which may result in a claim.

U.  To any claim for "damages" by any Named Insured against another Named Insured under this policy.

V.  "Damages" arising out of "bodily injury", "property damage", "personal injury", "advertising injury" for which coverage is provided under COVERAGE A or B.

W.  (1)  "Damages" arising out of or which would not have occurred in whole or in part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

   (2)  Any loss, cost or expense arising out of any:

      a.  Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize or in any way respond to or assess the effects of "pollutants"; or

      b.  Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of "pollutants".

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

## SUPPLEMENTARY PAYMENTS-COVERAGES A, B AND P

We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

1. All expenses we incur.

2. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

3. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

4. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $ 250 a day because of time off from work.

5. All costs taxed against the insured in the "suit".

6. Pre-judgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any pre-judgment interest based on that period of time after the offer.

7. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments **will not reduce** the limits of insurance for "bodily injury", "property damage", "personal injury" and "advertising injury" for which coverage is provided for under Coverage A or B.

These payments **will reduce** the limits of insurance for "damages" provided for under Coverage P.

## SECTION II - WHO IS AN INSURED

1. Coverages A and B

    A. If you are designated in the Declarations as:

        (1) An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

        (2) A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

        (3) An organization other than a partnership or joint venture, you are an insured. Your executive officers and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

    B. Each of the following is also an insured:

(1)    Your employees, other than your executive officers, but only for acts within the scope of their employment by you. However, no employee is an insured for:

    a.    "Bodily injury" or "personal injury" to you or to a co-employee while in the course of his or her employment, or the spouse, child, parent, brother or sister of that co-employee as a consequence of such "bodily injury" or "personal injury", or for any obligation to share "damages" with or repay someone else who must pay "damages" because of the injury; or

    b.    "Bodily injury" or "personal injury" arising out of his or her providing or failing to provide professional health care services; or

    c.    "Property damage" to property owned or occupied by or rented or loaned to that employee, any of your other employees, or any of your partners or members (if you are a partnership or joint venture).

(2)    Any person (other than your employee) or any organization while acting as your real estate manager.

(3)    Any person or organization having proper temporary custody of your property if you die, but only:

    a.    With respect to liability arising out of the maintenance or use of that property; and

    b.    Until your legal representative has been appointed.

(4)    Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

C.    With respect to "mobile equipment" registered in your name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission. Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability. However, no person or organization is an insured with respect to:

(1)    "Bodily injury" to a co-employee of the person driving the equipment; or

(2)    "Property damage" to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an insured under this provision.

D.    Any organization you newly acquire or form, other than a partnership or joint venture, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

(1)    Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

(2)    Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

(3)    Coverage B does not apply to "personal injury" or "advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership or joint venture that is not shown as a Named Insured in the Declarations.

E.    All clients, vendors, job owners, building owners, general contractors and certificate holders whom you have agreed, by written contract prior to an "occurrence" or offense to include as additional insureds, but only for liability arising out of your premises and operations, and except for liability arising out of the sole negligence of the aforementioned client, vendor, job owner, building owner, general contractor or certificate holder.

With respect to the vendors who are included as additional insureds above, the following additional provisions apply:

(1)    The insurance afforded the vendor does not apply to:

a.    "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement.  This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement;

b.    Any express warranty unauthorized by you;

c.    Any physical or chemical change in the product made intentionally by the vendor;

d.    Repackaging, unless unpacked solely for the purpose of inspection, demonstration, testing, or the substitution of parts under instructions from the manufacturer, and then repackaged in the original container;

e.    Any failure to make such inspections, adjustments, tests, or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of products;

f.    Demonstration, installation, servicing or repair operations, except such operations performed at the vendor's premises in connection with the sale of the product;

g.    Products which, after distribution or sale by you, have been labeled or relabeled or used as a container, part or ingredient of any other thing or substance by or for the vendor.


(2)    This insurance does not apply to any insured person or organization, from whom you have acquired such products, or any ingredient, part or container, entering into, accompanying or containing such products.

2.    Coverage P

A.    If you are designated in the Declarations as:

(1)    An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

(2)    A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

(3)    An organization other than a partnership or joint venture, you are an insured. Your executive officers and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

B.    Each of the following is also an insured:

(1)    Your employees, other than your executive officers, and employees of any predecessor firm designated as a Named Insured in the Declarations but only for acts within the scope of their employment by you or the predecessor firm.

(2)    Your former executive officer and directors and those of any predecessor firm designated as a Named Insured in the Declarations but only with respect to their duties while serving as your officers or directors or officers and directors of the predecessor firm.

(3)    Your former partners and those of any predecessor firm designated as a Named Insured in the Declarations but only with respect to their duties while serving as your partner or a partner of the predecessor firm.

(4)    Your former employees and those of any predecessor firm designated as a Named Insured in the Declarations but only for acts occurring during and within the scope of, their employment by you or the predecessor firm.

(5)    The heirs, administrators and legal representatives of any insured in the event of an insured's death, incapacity or bankruptcy, but only as respects professional services rendered prior to such insured's death, incapacity or bankruptcy.

No person or organization is an insured with respect to the conduct of any predecessor firm that is not designated as a Named Insured in the Declarations.

## SECTION III - LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

   A. Insureds;

   B. Claims made or "suits" brought: or

   C. Persons or organizations making claims or bringing "suits".

2. The General Aggregate Limit is the most we will pay for the sum of:

   A. "Damages" under Coverage A, except "damages" because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

   B. "Damages" under Coverage B.

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage A for "damages" because of "bodily injury" and "property damage" included in the "products completed operations hazard".

4. The Professional Aggregate Limit is the most we will pay for the sum of:

   A. "Damages" under Coverage P; and

   B. Payments for Supplementary payments related to Item A. above

5. Subject to 2. above, the Personal and Advertising Injury Limit is the most we will pay under Coverage B for the sum of all "damages" because of all "personal injury" and all "advertising injury" sustained by any one person or organization.

6. Subject to 2. or 3. above, whichever applies, the Each Occurrence Limit is the most we will pay for "damages" under Coverage A because of all "bodily injury" and "property damage", arising out of any one "occurrence".

7. Subject to 4. above, the Each Claim Limit is the most we will pay under Coverage P for the sum of "damages" and Supplementary payments arising out of any one claim.

8. Subject to 6. above, the Fire Damage Limit is the most we will pay under Coverage A for "damages" because of "property damage" to premises rented to you arising out of any one fire.

The limits of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV - COMMERCIAL GENERAL LIABILITY AND PROFESSIONAL LIABILITY CONDITIONS

We have no duty to provide coverage under this Coverage Part unless you and any other involved insured have fully complied with the Conditions contained in this Coverage Part.

1.    **Bankruptcy**

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

2.    **Duties in the Event of Occurrence, Claim or Suit**

A.    You must see to it that we are notified as soon as practicable of an "occurrence", offense, or act, error or omission which may result in a claim.  To the extent possible, notice should include:

(1)    How, when and where the "occurrence", offense or act, error or omission took place;

(2)    The names and addresses of any injured persons and witnesses, and any persons or organizations who may make claims; and

(3)    The nature and location of any injury or damage arising out of the "occurrence", offense or act, error or omission.

Notice of an "occurrence" is not notice of a claim.  Notice of an act, error, or omission is not notice of a claim.

B.    If a claim is received by any insured you must:

(1)    Immediately record the specifics of the claim and the date received; and

(2)    Notify us as soon as practicable.

You must see to it that we receive written notice of the claim as soon as practicable.

C.    You and any other involved insured must:

(1)    Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or a "suit";

(2)    Authorize us to obtain records and other information;

(3)    Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

(4)    Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

D.     No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

3.     **Legal Action Against Us.**

No person or organization has a right under this Coverage Part:

A.     To join us as a party or otherwise bring us into a "suit" asking for "damages" from an insured; or

B.     To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial; but we will not be liable for "damages" that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

4.     **Other Insurance.**

A.     **Coverages A and B**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:

(1)     Primary Insurance

This insurance is primary except when (2) below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in (3) below.

(2)     Excess Insurance

This insurance is excess over any of the other insurance, whether primary, excess, contingent or on any other basis:

a.     That is Fire, Extended Coverage, Builders' Risk, Installation Risk or similar coverage for "your work"

b.     That is Fire insurance for premises rented to you; or

c.     If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion G. of Coverage A Section I).

When this insurance is excess, we will have no duty under Coverages A or B to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.



When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

a.    The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

b.    The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

(3)    Method of Sharing

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

B.    Coverage P

If other insurance is available to an Insured covering a claim also covered under this policy, this policy shall be in excess of the sum of the applicable Deductible as stated in the Declarations of this policy and the limits of insurance of such other insurance whether such other insurance is stated to be primary, pro rata, contributory, excess, contingent or otherwise, unless such other insurance is written only as a specific excess insurance over the Limit of Insurance provided in this policy.

5.    **Premium Audit.**

A.    We will compute all premiums for this Coverage Part in accordance with our rules and rates.

B.    Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period.

Audit premiums are due and payable on notice to the first Named Insured. If the sum of the advance and audit premiums paid for the policy term is greater than the earned premium, we will return the excess to the first Named Insured, but not if such audit premium is less than the minimum premium shown in the Policy Declarations.

C.    The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

D.    Each Named Insured is jointly and severally liable for the payment of premiums and deductibles due us under this policy.

6.    **Representations.**

By accepting this policy, you agree:

A.    The statements in the Declarations and the application are accurate and complete;

B.    Those statements are based upon representations you made to us;

C.    We have issued this policy in reliance upon your representations; and

D.    That a copy of the application shall be attached to the policy, and become part of the policy.

7.    **Separation of Insureds.**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned to the first Named Insured, this insurance applies:

A.    As if each Named Insured were the only Named Insured; and

B.    Separately to each insured against whom claim is made or "suit" is brought.

8.    **Transfer of Rights of Recovery Against Others to Us.**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

9.    **When We Do Not Renew.**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the non-renewal not less than 60 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

10.    **Your Right to Claim and "Occurrence" Information.**

We will provide the first Named Insured shown in the Declarations the following information relating to this and any preceding policy we have issued to you during the previous three years:

A.    A list or other record of each "occurrence" or claim not previously reported to any other insurer, of which we were notified in accordance with Paragraph 2.A. of this Section. We

will include the date and brief description of the "occurrence" or claim if that information was in the notice we received.

B.    A summary by policy year, of payments made and amounts reserved, stated separately, under any applicable General Aggregate Limit.

Amounts reserved are based on our judgment. They are subject to change and should not be regarded as ultimate settlement values.

You must not disclose this information to any claimant or any claimant's representative without our consent.

We will provide this information only if we receive a written request from the first Named Insured. We will provide this information within 45 days of receipt of the request.

We compile claim and "occurrence" information for our own business purposes and exercise reasonable care in doing so. In providing this information to the first Named Insured, we make no representations or warranties to insureds, insurers, or others to whom this information is furnished by or on behalf of any insured. Cancellation or non-renewal will be effective even if we inadvertently provide inaccurate information.

11.    **Deductible Liability.**

Our obligation under Coverages A, B and P to pay "damages" and Supplementary Payments on your behalf applies only to the sum of the amount of "damages" and Supplementary Payments in excess of any deductible amounts stated in the Commercial General Liability and Professional Liability Coverage Part Declarations as applicable to such coverages, and the limits of insurance applicable to "each occurrence" or "each claim" for such coverages will be reduced by the amount of such deductible. Aggregate limits for such coverages shall not be reduced by the application of such deductible amount.

The deductible amounts stated in the Commercial General Liability and Professional Liability Coverage Part Declarations apply as follows:

A.    Coverages A and B

(1)    **PER CLAIM BASIS** - If the deductible is on a per claim basis, the deductible amount applies under Coverage A and Coverage B to all damages because of "bodily injury", "property damage" "personal injury" and "advertising injury" sustained by one person or organization as the result of any one "occurrence".

(2)    **PER OCCURRENCE BASIS** - If the deductible is on a per occurrence basis, the deductible amount applies under Coverage A and Coverage B to all "damages" because of "bodily injury", "property damage", "personal injury" and "advertising injury" as a result of any one "occurrence" regardless of the number of persons or organizations who sustain damages because of that "occurrence".

B.    Coverage P.

PER CLAIM BASIS - The deductible amount applies to the sum of all "damages" and Supplementary Payments under Coverage P sustained by any one person or organization as the result of a negligent act, error, or omission or a series of related acts, errors or omissions.

C.    The terms of this insurance, including those with respect to:

    (1)    Our right and duty to defend any "suits" seeking those "damages"; and

    (2)    Your duties in the event of an "occurrence", claim, or "suit";

    apply irrespective of the application of the deductible amount.

D.    We may pay any part or all of the deductible amount to effect settlement of any claim or "suit" or payment of any related Supplementary Payments. Upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us.

## SECTION V - EXTENDED REPORTING PERIODS

1.    We will provide an Extending Reporting Period, as described below, if:

A.    This Coverage Part is cancelled or not renewed; or

B.    We renew or replace this Coverage Part with insurance that:

    (1)    Has a Retroactive Date later then the date shown in the Declarations of this Coverage Part; or

    (2)    Does not apply to negligent acts, errors or omissions in the rendering or failure to render "professional services" on a claims-made basis.

2.    Extended Reporting Periods do not extend the policy period or change the scope of coverage provided. It applies only to negligent acts, errors or omissions that occur before the end of the policy period. Once in effect, the Extended Reporting Period may not be canceled.

3.    A basic Extended Reporting Period is automatically provided without additional charge. This period starts with the end of the policy period and lasts for;

A.    Five years for claims arising out of negligent acts, errors or omissions reported to us, not later than 60 days after the end of the policy period, in accordance with Paragraph 2.A. of COMMERCIAL GENERAL LIABILITY AND PROFESSIONAL LIABILITY CONDITIONS (Section IV).

B.    Sixty days for all other claims.

The Basic Extended Reporting Period does not apply to claims that are covered under any subsequent insurance you purchase, or that would be covered but for exhaustion of the amount of insurance applicable to such claims.

4.    A Supplemental Extended Reporting Period of twelve (12), twenty-four (24), thirty-six (36), forty-eight (48) or sixty (60) months is available, but only by an endorsement. This supplemental period starts when the Basic Extended Reporting Period, set forth in Paragraph 3. above, ends.

The first Named Insured must give us a written request for the endorsement within 60 days after the end of the policy period. The Supplemental Extended Reporting Period will not go into effect unless the first Named Insured pays the additional premium, if any, promptly when due.

We will determine the additional premium in accordance with our rules and rates. In doing so, we may take into account the following:

A.    The exposures insured;

B.    Previous types and amounts of insurance;

C.    Limits of Insurance available under this Coverage Part for future payment of damages and Supplementary Payments; and

D.    Other related factors.

The additional premium will not exceed the following scheduled percentage of the annual premium for this Coverage Part.

| Supplemental Extended Reporting Period | Additional Premium |
|---|---|
| 12 months | 0% |
| 24 months | 100% |
| 36 months | 125% |
| 48 months | 150% |
| 60 months | 200% |

This endorsement shall set forth the terms, not inconsistent with this Section, applicable to the Supplemental Extended Reporting Period, including a provision to the effect that the insurance afforded for claims first received during such period is excess over any other valid and collectible insurance available under policies in force after the Supplemental Extended Reporting Period starts.

5.    The Basic Extended Reporting Period and the Supplemental Extended Reporting Period do not reinstate or increase the Limits of Insurance.

## SECTION VI - DEFINITIONS

1.    "Advertising injury" means injury arising out of one or more of the following offenses:

A.    Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

B.    Oral or written publication of material that violates a person's right of privacy;

C.    Misappropriation of advertising ideas or style of doing business; or

D.    Infringement of copyright, title or slogan.

2.    "Auto" means a land motor vehicle, trailer or semi-trailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment".

3.    "Bodily Injury" means bodily injury, shock, fright, mental injury, disability, mental anguish, humiliation, sickness or disease sustained by a person, including death resulting from any of these at any time.

4.    "Coverage Period" means the time from the inception of the first policy of this type we wrote for you to the expiration of the last such policy we wrote for you including any Extended Reporting Periods in such policy.

5.    "Coverage territory" means:

A.    The United States of America (including its territories and possessions), Puerto Rico and Canada;

B.    International waters or airspace, provided the injury or damage does not occur in the course of travel or transportation to or from any place not included in A. above; or

C.    All parts of the world if:

   (1)    The injury or damage arises out of:

      a.   Goods or products made or sold by you in the territory described in A. above; or

      b.   The activities of a person whose home is in the territory described in A. above, but is away for a short time on your business; and

   (2)    The insured's responsibility to pay "damages" is determined in a "suit" on the merits or in a settlement we agree to.

6.    "Damages" means any compensatory amount which an Insured is legally obligated to pay for any claim to which this insurance applies, but does not include injunctive or equitable relief or the return of fees or charges for services rendered.

7.    "Impaired property" means tangible property, other than "your product" or "your work" that cannot be used or is less useful because:

A.    It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

B.    You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

A.    The repair, replacement, adjustment or removal of "your product" or "your work"; or

B.    Your fulfilling the terms of the contract or agreement.

6.    "Insured contract" means:

A.    A lease of premises;

B.    A sidetrack agreement;

C.    Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

D.    An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

E.    An elevator maintenance agreement;

F.    That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

An "insured contract" does not include that part of any contract or agreement:

A.    That indemnifies any person or organization for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and effecting any railroad bridge or trestle, tracks, road beds, tunnel, underpass or crossing;

B.    That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

(1)    Preparing, approving or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications; or

(2)    Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage;

C.    Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render "professional services", including those listed in B. above and supervisory, inspection or engineering services; or

D.    That indemnifies any person or organization for damage by fire to premises rented or loaned to you.

COI.P017 (05/98)                        Page 30 of 34

9.   "Loading or unloading" means the handling of property:

   A.   After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

   B.   While it is in or on an aircraft, watercraft or "auto"; or

   C.   While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered; but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

10.  "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

   A.   Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

   B.   Vehicles maintained for use solely on or next to premises you own or rent;

   C.   Vehicles that travel on crawler treads;

   D.   Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

      (1)   Power cranes, shovels, loaders, diggers or drills; or

      (2)   Road construction or resurfacing equipment such as graders, scrapers or rollers.

   E.   Vehicles not described in A., B., C. or D. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

      (1)   Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

      (2)   Cherry pickers and similar devices used to raise or lower workers;

   F.   Vehicles not described in A., B., C. or D. above maintained primarily for purposes other than the transportation of persons or cargo. However self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

      (1)   Equipment designed primarily for:

         a.   Snow removal;

         b.   Road maintenance, but not construction or resurfacing; or

        c.     Street cleaning;

   (2)    Cherry pickers similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

   (3)    Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

11.    "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

12.    "Personal injury" means injury, other than "bodily injury", arising out of one or more of the following offenses:

   A.    False arrest, detention or imprisonment;

   B.    Malicious prosecution;

   C.    The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor;

   D.    Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

   E.    Oral or written publication of material that violates a person's right of privacy.

13.    "Products-completed operations hazard" includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

   A.    Products that are still in your physical possession; or

   B.    Work that has not yet been completed or abandoned.

"Your work" will be deemed completed at the earliest of the following times:

   A.    When all of the work called for in your contract has been completed.

   B.    When all of the work to be done at the site has been completed if your contract calls for work at more than one site.

   C.    When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

This hazard does not include "bodily injury" or "property damage" arising out of:

A.    The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle created by the "loading or unloading" of it;

B.    The existence of tools, uninstalled equipment or abandoned or unused materials; or

C.    Products or operations for which the classification in this Coverage Part or in our manual of rules includes products or completed operations.

14.    "Professional services" means those services designated in the Professional Services Schedule attached to this policy.

15.    "Property damage" means:

A.    Physical injury to tangible property including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

B.    Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

16.    "Suit" means a civil proceeding in which "damages" because of "bodily injury", "property damage", "personal injury" , "advertising injury" or any act, error or omission to which this insurance applies are alleged.
"Suit" includes:

A.    An arbitration proceeding in which such "damages" are claimed and to which the insured must submit or does submit with our consent; or

B.    Any other alternative dispute resolution proceeding in which such "damages" are claimed and to which the insured submits with our consent.

17.    "Your product" means:

A.    Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(1)    You;

(2)    Others trading under your name; or

(3)    A person or organization whose business or assets you have acquired; and

B.    Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

"Your product" includes:

A.     Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

B.     The providing of or failure to provide warnings or instructions.

"Your product" does not include vending machines or other property rented to or located for the use of others but not sold.

18.    "Your work" means:

A.     Work or operations performed by you or on your behalf; and

B.     Materials, parts or equipment furnished in connection with such work or operations.

"Your work" includes:

A.     Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

B.     The providing of or failure to provide warnings or instructions.



# ENDORSEMENT #1

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement, effective **8/5/2001** at 12:01 A.M. Standard time, forms a part of Policy Number

**GPC 0001005-03** issued to **North American Industries** by Caliber One Indemnity Company.

This endorsement modifies insurance provided for under the following:

**Commercial General Liability & Professional Liability Coverage Form – Claims-Made**

---

### EXCLUSION – DATE-RELATED COMPUTER AND OTHER ELECTRONIC PROBLEMS

---

The following exclusion is added:

This insurance does not apply to any claim or "suit" arising directly or indirectly out of:

A.      Any actual or alleged failure, malfunction or inadequacy of:

    (1)      Any of the following, whether belonging to any insured or to others:

        a.   Computer hardware, including micro-processors;
        b.   Computer application software;
        c.   Computer operating systems and related software;
        d.   Computer networks;
        e.   Microprocessors (computer chips) not part of any computer system; or
        f.   Any other computerized or electronic equipment or components; or

    (2)      Any other products, and any services, data or functions that directly or indirectly use or rely upon, in any manner, any of the items listed in Paragraph A.(1) of this endorsement

    due to the inability to correctly recognize, process, distinguish, interpret or accept dates.

B.      Any advice, consultation, design, evaluation, inspection, installation, maintenance, repair replacement or supervision provided or done by you or for you to determine, rectify or test for, any potential or actual problems described in Paragraph A. of this endorsement.

We will have no duty to defend the Insured against any claim or "suit" seeking damages to which this insurance does not apply.



## ENDORSEMENT #2

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement, effective **8/5/2001** at 12:01 A.M. Standard time, forms a part of Policy Number

**GPC 0001005-03** issued to **North American Industries** by Caliber One Indemnity Company.

This endorsement modifies insurance provided for under the following:

**Commercial General Liability & Professional Liability Coverage Form – Claims-Made**

---

### SERVICE OF SUIT

---

Pursuant to any statute of any state, territory or district of the United States which makes provision therefore the Company hereby designates the Commissioner, Superintendent or Director of Insurance or other officer specified for that purpose in the statute, and his successor or successors in office, as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted in any Court of competent jurisdiction by or on behalf of the Insured or any beneficiary hereunder arising out of this contract of insurance, and hereby designates the person listed below as the person to whom said officer is authorized to mail such process or a true copy thereof.:

Ronald S. Austin
**President and Chief Operating Officer**
**Caliber One Indemnity Company**
**Lower Makefield Corporate Center**
**1040 Stony Hill Road**
**Yardley, PA 19067**

_____
Authorized Representative

CALIBER *One*
Indemnity Company
COI.E68 (10/1999)

# ENDORSEMENT #3

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement, effective **8/5/2001** at 12:01 A.M. Standard time, forms a part of Policy Number

**GPC 0001005-03** issued to **North American Industries** by Caliber One Indemnity Company.

This endorsement modifies insurance provided for under the following:

### Commercial General Liability & Professional Liability Coverage Form – Claims-Made

---

## DESIGNATED PROFESSIONAL SERVICES SCHEDULE

---

This Schedule forms a part of the policy and is invalid unless signed by an Authorized Representative of the Company.

### Schedule

Crane design and manufacturer

_____
**Authorized Representative**

## ENDORSEMENT #4

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement, effective **8/5/2001** at 12:01 A.M. Standard time, forms a part of Policy Number

**GPC 0001005-03** issued to **North American Industries** by Caliber One Indemnity Company.

This endorsement modifies insurance provided for under the following:

**Commercial General Liability & Professional Liability Coverage Form – Claims-Made**

---

### MINIMUM EARNED PREMIUM ENDORSEMENT

---

The entire policy premium, including endorsements added after the inception date of this policy, is 25% earned as of the inception date of the policy.

_____

**Authorized Representative**



COI.E112 (07/2000)                    PAGE 1 OF 1

## ENDORSEMENT #5

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement, effective **8/5/2001** at 12:01 A.M. Standard time, forms a part of Policy Number

**GPC 0001005-03** issued to **North American Industries** by Caliber One Indemnity Company.

This endorsement modifies insurance provided for under the following:

**Commercial General Liability & Professional Liability Coverage Form – Claims-Made**

---

### AMENDMENT – NOTICE OF CANCELLATION

---

It is hereby understood and agreed that the Insured shall receive a 30 day notice in the event of cancellation except in the case of non-payment of premium where the Insured shall receive a **10** day notice of cancellation.

Authorized Representative



## ENDORSEMENT #6

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement, effective **8/5/2001** at 12:01 A.M. Standard time, forms a part of Policy Number

**GPC 0001005-03** issued to **North American Industries** by Caliber One Indemnity Company.

This endorsement modifies insurance provided for under the following:

### Commercial General Liability & Professional Liability Coverage Form – Claims-Made

---

### EXCLUSION - LEAD

---

This insurance does not apply to, nor do we have any duty to defend any:

1.    Claim arising out of, resulting from, caused by or contributed to by the toxic or pathological properties of lead, lead compounds or lead contained in any materials;

2.    Cost or expense to abate, mitigate, remove or dispose of lead, lead compounds or materials containing lead;

3.    Supervision, instructions, recommendations, warnings or advice given or which should have been given in connection with parts 1. or 2. above; or

4.    Obligation to share damages with or repay someone else who must pay damages in connection with parts 1., 2. or 3. above.



_____

**Authorized Representative**

CALIBER *One*
Indemnity Company

COI.E35 (04/99)                    Page 1 of 1

## ENDORSEMENT #7

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement, effective **8/5/2001** at 12:01 A.M. Standard time, forms a part of Policy Number

**GPC 0001005-03** issued to **North American Industries** by Caliber One Indemnity Company.

This endorsement modifies insurance provided for under the following:

### Commercial General Liability & Professional Liability Coverage Form – Claims-Made

### SELF-INSURED RETENTION ENDORSEMENT.

"You" and "your" refer to the Named Insured shown in the Declarations. Words or phrases in quotation marks have special meaning shown in the Definitions Section in the Coverage Form of the policy to which this endorsement is attached.

### SCHEDULE

| | |
|---|---|
| Self-Insured Retention Per Claim:<br>Self-Insured Retention Per Occurrence: | $100,000.00 |
| Self-Insured Retention includes costs of investigation and defense:<br>Self-Insured Retention does not include costs of investigation and defense:<br>(An 'X' indicates which provision above applies.) | X |
| Loss Run Reporting Frequency:<br>Annual<br>Quarterly<br>Monthly<br>(Applies if an 'X' is indicated) | X |
| Claims Administrator (if any) | Engle, Martin & Associates |

You have chosen to self-insure the first dollars of loss and, if indicated in the Schedule above, investigation and defense expenses, to which the insurance provided by the policy of which this endorsement is made a part, applies. This policy, therefore, is subject to the following additional provisions. In the event of conflict with any provision elsewhere in the policy this endorsement will take precedence and control. We have no duty to



COI.E193A (07/2001)                    Page 1 of 3

provide any coverage under the policy, including but not limited to investigation or defense, unless you have complied with all the terms and conditions of this Self-Insured Retention Endorsement.

A.  Insurance provided by the policy of which this endorsement is made a part will only apply in excess of the amount of Self-Insured Retention shown in the Schedule above. This Self-Insured Retention may or may not include costs of investigation and defense depending on the indication in the Schedule. However, in no event will costs of investigation and defense include salaries or any other form of compensation of your employees, including but not limited to in-house counsel who are employed or otherwise retained, or any of your general business administrative expenses.

The Limits of Insurance stated in the Declarations will apply in excess of the insured's Self-Insured Retention, and our total liability for all damages will not exceed the Limits of Insurance.

For any liability to which the policy applies, you shall pay the Self-Insured Retention before we have any obligation to pay loss or damages or participate in any investigation or defense. The Self-Insured Retention will be primary and underlying to such insurance as is afforded by this policy. The Self-Insured Retention shall only be satisfied by those amounts paid by you in the settlement and/or satisfaction of a claim or "suit".

B.  Expenses covered under this policy for any investigation or defense expenses, and by any Supplementary Payments provisions, will only apply if we decide to participate in or defend any claims or "suits", and then only to the extent the loss or damage exceeds the Self-Insured Retention shown in the Schedule.

C.  You must give us the opportunity to participate in any settlement offer that exceeds the Self-Insured Retention. We may contribute to or require you to reject any such settlement offer. We have the right but not the duty, at our expense, at any time to assume the defense and/or settlement of any claim or "suit" where damages are sought which exceed the amount of the Self-Insured Retention. If we do assume the defense and/or settlement of any claim or "suit", upon written request from us, you will tender such portion or all of the Self-Insured Retention to complete the settlement of such claim or "suit".

D.  We may require you to accept a settlement offer within the Self-Insured Retention.

E.  In addition to any duties in the event of an "occurrence", claim or "suit" contained in the policy, you must notify us whenever:

   1.  You may reasonably conclude that an "occurrence", claim or "suit" may result in payment in excess of $50,000 or 50% of the Self-Insured Retention, whichever is less; or

   2.  You receive any demand which exceeds the Self-Insured Retention; or

   3.  Any of the following occur:

      (a)  Fatality;

      (b)  Serious bodily injury, including but not limited to brain injury, amputation, burns, fractures, paralysis, permanent disability, or significant wounds or any decubitis ulcers;



    (c)    Allegations of abuse;

    (d)    Civil Rights Violations;

    (e)    Rape; or

    (f)    A claim for loss due to a construction defect.

However, notice does not guarantee coverage. All the policy provisions continue to apply.

F.    If a Loss Run Reporting Frequency is indicated in the Schedule of this endorsement, reports of incidents, "occurrences", claims, "suits" or losses you have noted, investigated, defended or settled, generally referred to as Loss Runs, must be provided to us in at least the frequency which is indicated. These Loss Runs will contain, at minimum, the following information:

    1.    Any specific identifier for tracking, such as a claim of file number assigned by you and/or your administrator;

    2.    Date of incident, "occurrence", or loss;

    3.    Any amounts reserved or paid;

    4.    An assignment for type of loss.

Also, to the extent possible, the loss runs should include the nature of the injury and the facts of the incident.

G.    Your bankruptcy, insolvency, inability or refusal to pay the Self-Insured Retention shall not change or increase our obligations under this policy.

H.    No one may incur any expense on our behalf without our prior written consent.

I.    If a Claims Administrator is shown in the Schedule of this endorsement you shall remain contracted with that entity to administer handling of incidents, "occurrences", claims or "suits" within the Self-Insured Retention. If you desire to change the Claims Administrator shown in the Schedule we must be notified immediately and we must agree to the change. The expiration or termination of the policy shall not absolve you of this obligation.



## ENDORSEMENT #8

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement, effective **8/5/2001** at 12:01 A.M. Standard time, forms a part of Policy Number

**GPC 0001005-03** issued to **North American Industries** by Caliber One Indemnity Company.

This endorsement modifies insurance provided for under the following:

**Commercial General Liability & Professional Liability Coverage Form – Claims-Made**

---

### GENERAL CHANGE ENDORSEMENT

---

The chart depicting the Additional Premium for Extended Reporting Periods under 4. of Section V - Extended Reporting Periods is deleted in its entirety and replaced by the following:

| Supplemental Extended Reporting Period | Additional Premium |
|---|---|
| 12 Months | 100% |
| 24 Months | 125% |
| 36 Months | 150% |
| 48 Months | 175% |
| 60 Months | 200% |

All other terms and conditions remain unchanged.

_Signature_

_____
Authorized Representative



Exhibit B

RETURN DATE: JUNE 15, 2004      :      SUPERIOR COURT

L.G. DEFELICE/FKCI, J.V.      :      JUDICIAL DISTRICT OF
and L.G. DEFELICE, INC.      :      NEW HAVEN

v.      :      AT NEW HAVEN

NORTH AMERICAN INDUSTRIES, INC.      :      MAY 13, 2004

## COMPLAINT

1. L.G. DeFelice, Inc. (hereinafter "DeFelice") is a corporation duly incorporated under the laws of the state of Connecticut and principally engaged in the highway construction business within the state of Connecticut. DeFelice is located at 30 Bernhard Road in North Haven, CT.

2. L.G. DeFelice/FKCI, J.V. is a joint venture between DeFelice and Frontier Kemper Constructors, Inc. formed in Connecticut and located at 30 Bernhard Road in North Haven, CT. The joint venture was formed to perform work on Connecticut Department of Transportation Project No. 15-271 on Interstate 95 in Bridgeport, CT. ('Project')

3. North American Industries, Inc. (hereinafter "NAI") is

a corporation with an office at 80 Bolton, in Woburn,
Massachusetts 01801.  NAI is organized and existing under the
laws of Massachusetts.

4.  On or about February 20, 2001, L.G. DeFelice/FKCI, J.V.
entered into an agreement with NAI ('agreement') whereby NAI
agreed to supply two 35 ton North American Gantry cranes and
related equipment that satisfied agreed upon specifications to
L.G. DeFelice/FKCI, J.V. for work to be performed on the Project.

5.  The agreement between L.G. DeFelice/FKCI, J.V. and
NAI was negotiated and executed in North Haven, Connecticut.

6.  Pursuant to the agreement NAI agreed to provide the
specific cranes and related equipment to the project site and
have them ready for their intended use by no later than April 30,
2001.  NAI also provided a warranty with respect to the cranes,
agreed to service the cranes, replace necessary parts, and to
ensure the cranes operated properly for their intended purpose
after the cranes were delivered to the Project.

7.  NAI breached the agreement by:

   a)  failing to deliver the cranes by the agreed upon
       date;

2

      b)    providing cranes that failed to meet the agreed upon specifications and NAI's warranty;

      c)    delivering the cranes with defective and/or improper parts and equipment;

      d)    failing to replace the defective/improper crane parts and equipment in a timely manner;

      e)    failing to respond at all to repeated requests to repair/replace parts and equipment that did not function properly once the cranes began operating; and,

      f)    providing equipment that did not meet the applicable safety regulations.

    8)   As a direct result of NAI's breach of the agreement plaintiffs have suffered damages, including but not limited to:

      a)    additional costs related to delays resulting from the late delivery and additional time required before the cranes became operational for their intended purpose;

      b)    additional labor, material and equipment costs for

3

modifications and testing required because the
cranes did not meet the agreed upon
specifications;

c)      additional labor, material and equipment costs to
        repair and replace defective and/or improper parts
        and equipment supplied by NAI; and

d)      other additional costs to perform NAI's
        obligations under the agreement.

4

**WHEREFORE**, the plaintiffs claim:

1. Money damages;

2. Interest;

3. Costs and expenses of this action;

4. Reasonable attorney's fees;

5. Such other legal and equitable relief to which the plaintiff may be entitled as a result of the facts alleged here in this complaint.


Respectfully Submitted,

The Plaintiffs,
L.G. DEFELICE/FKCI, J.V. and
L.G. DEFELICE, INC.

BY William S. Wilson, II
Garcia & Milas, P.C.
44 Trumbull Street
New Haven, CT 06510
Tel: (203) 773-3824
Juris No. 105053

5

RETURN DATE: JUNE 15, 2004          :      SUPERIOR COURT

L.G. DEFELICE/FKCI, J.V.            :      JUDICIAL DISTRICT OF
and L.G. DEFELICE, INC.             :      NEW HAVEN

v.                                  :      AT NEW HAVEN

NORTH AMERICAN INDUSTRIES, INC.     :      MAY 13, 2004

## STATEMENT OF AMOUNT IN DEMAND

The amount, legal interest or property in demand is $15,000
or more, exclusive of interest and costs.

Respectfully submitted,

The Plaintiff,
L.G. DeFelice, Inc.

By: _____

William B. Wilson, II
Garcia & Milas, P.C.
44 Trumbull Street
New Haven, CT 06510
(203) 773-3824
Juris No. 105053

# SUMMONS - CIVIL

(Except Family Actions)
JD-CV-1 Rev. 1-2000
C.G.S. § 51-345, 51-347, 51-349, 51-350, 52-45a,
52-48, 52-259, P.B. Secs 3-1 thru 3-21, 8-1

## STATE OF CONNECTICUT
## SUPERIOR COURT
www.jud.state.ct.us

**X ONE OF THE FOLLOWING:**
Amount, legal interest or property
in demand, exclusive of interest
and costs is:

☐ less than $2,500
☐ $2,500 through $14,999.99
☒ $15,000 or more
("X" if applicable)

☐ Claiming other relief in addition
to or in lieu of money or
damages.

### INSTRUCTIONS

1. Type or print legibly; sign original summons and conform all copies of the summons.
2. Prepare or photocopy conformed summons for each defendant.
3. Attach the original summons to the original complaint, and attach a copy of the summons to each copy of the complaint. Also, if there are more than 2 plaintiffs or 4 defendants prepare form JD-CV-2 and attach it to the original and all copies of the complaint.
4. After service has been made by a proper officer, file original papers and officer's return with the clerk of court.
5. The party recognized to pay costs must appear personally before the authority taking the recognizance.
6. Do not use this form for actions in which an attachment, garnishment or replevy is being sought. See Practice Book Section 8-1 for other exceptions.

TO: Any proper officer; BY AUTHORITY OF THE STATE OF CONNECTICUT, you are hereby
commanded to make due and legal service of this Summons and attached Complaint.

RETURN DATE (Mo., day, yr.) (Must be a Tuesday)   6/18/04

| | | | | CASE TYPE (See JD-CV-10) |
|---|---|---|---|---|
| ☒ JUDICIAL DISTRICT | | AT (Town in which writ is returnable) (C.G.S. 51-346, 51-349) | | Major  C  Minor  00 |
| ☐ HOUSING SESSION | ☐ G.A. NO. | New Haven | | |

ADDRESS OF COURT CLERK WHERE WRIT AND OTHER PAPERS SHALL BE FILED (No., street, town and zip code) (C.G.S. 51-346, 51-350)
235 Church Street, New Haven, CT 06510

TELEPHONE NO. (with area code)
203-503-6800

| PARTIES | NAME AND ADDRESS OF EACH PARTY (No., street, town and zip code) NOTE: Individuals' Names: Last, First, Middle Initial | | PTY NO. |
|---|---|---|---|
| FIRST NAMED PLAINTIFF | L.G. DeFelice/FECI, J.V., 30 Bernhard Road, North Haven, CT 06473 | ☐ Form JD-CV-2 attached | 01 |
| Additional Plaintiff | L.G. DeFelice, Inc., 30 Bernhard Road, North Haven, CT 06473 | | 02 |
| FIRST NAMED DEFENDANT | North American Industries, Inc., 80 Hotlen Street, Woburn, MA 01801 | | 50 |
| | *Helten* | | |
| Additional Defendant | | | 51 |
| Additional Defendant | | | 52 |
| Additional Defendant | | | 53 |

## NOTICE TO EACH DEFENDANT

1. **YOU ARE BEING SUED.**
2. This paper is a Summons in a lawsuit.
3. The Complaint attached to these papers states the claims that each Plaintiff is making against you in this lawsuit.
4. To respond to this Summons, or to be informed of further proceedings, you or your attorney must file a form called an "Appearance" with the Clerk of the above-named Court at the above Court address on or before the second day after the above Return Date.
5. If you or your attorney do not file a written "Appearance" form on time, a judgment may be entered against you by default.

6. The "Appearance" form may be obtained at the above Court address.
7. If you believe that you have insurance that may cover the claim that is being made against you in this lawsuit, you should immediately take the Summons and Complaint to your insurance representative.
8. If you have questions about the Summons and Complaint, you should consult an attorney promptly. The Clerk of Court is not permitted to give advice on legal questions.

| DATE | SIGNED (Sign and "x" proper box) | | TYPE IN NAME OF PERSON SIGNING AT LEFT |
|---|---|---|---|
| 5/13/04 | William S. Wilson II | ☒ Clerk of Superior Court  ☐ Assistant Clerk | William S. Wilson, II |

FOR THE PLAINTIFF(S) PLEASE ENTER THE APPEARANCE OF:

| NAME AND ADDRESS OF ATTORNEY, LAW FIRM OR PLAINTIFF IF PRO SE (No., street, town and zip code) | TELEPHONE NUMBER | JURIS NO. (if any, or law firm) |
|---|---|---|
| Garcia & Milas, P.C., 44 Trumbull St., New Haven, CT 06510 | 203-773-3824 | 105093 |

NAME AND ADDRESS OF PERSON RECOGNIZED TO PROSECUTE IN THE AMOUNT OF $250 (No., street, town and zip code)
Jessica DeStefano, Paralegal, 44 Trumbull St., New Haven, CT 06510

SIGNATURE OF PLAINTIFF IF PRO SE

| # PLFS. | # DEFS. | # CNTS. | SIGNED (Official taking recognizance, "x" proper box) | | For Court Use Only |
|---|---|---|---|---|---|
| 2 | 1 | 1 | William S. Wilson II | ☒ Comm. of Superior Court  ☐ Assistant Clerk | FILE DATE |

## IF THIS SUMMONS IS SIGNED BY A CLERK:

a. The signing has been done so that the Plaintiff(s) will not be denied access to the courts.
b. It is the responsibility of the Plaintiff(s) to see that service is made in the manner provided by law.
c. The Clerk is not permitted to give any legal advice in connection with any lawsuit.
d. The Clerk signing this Summons at the request of the Plaintiff(s) is not responsible in any way for any errors or omissions in the Summons, any allegations contained in the Complaint, or the service thereof.

| I hereby certify I have read and understand the above: | SIGNED (Pro Se Plaintiff) | DATE SIGNED | DOCKET NO. |
|---|---|---|---|

®JS 44  (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

NORTH AMERICAN INDUSTRIES, INC.

**(b)** County of Residence of First Listed Plaintiff   MIDDLESEX
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
MICHAEL H. THEODORE
COHN & DUSSI, LLC, 25 BURLINGTON MALL Rd. 6TH FL
BURLINGTON, MA 01803  781-494-C200 /223

## DEFENDANTS

CALIBER ONE INDEMNITY COMPANY

FILED
IN CLERKS OFFICE
2005 FEB 15  P 12:43
U.S. DISTRICT COURT
DISTRICT OF MASS

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1  U.S. Government Plaintiff
- ☐ 3  Federal Question (U.S. Government Not a Party)
- ☐ 2  U.S. Government Defendant
- ☑ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☑ 1 | ☑ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

### CONTRACT
- ☑ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

### REAL PROPERTY
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

### TORTS
**PERSONAL INJURY**
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury

**PERSONAL INJURY**
- ☐ 362 Personal Injury - Med. Malpractice
- ☐ 365 Personal Injury - Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

### CIVIL RIGHTS
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 444 Welfare
- ☐ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☐ 440 Other Civil Rights

### PRISONER PETITIONS
- ☐ 510 Motions to Vacate Sentence
  **Habeas Corpus:**
- ☐ 530 General
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

### FORFEITURE/PENALTY
- ☐ 610 Agriculture
- ☐ 620 Other Food & Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 R.R. & Truck
- ☐ 650 Airline Regs.
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

### LABOR
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Mgmt. Relations
- ☐ 730 Labor/Mgmt.Reporting & Disclosure Act
- ☐ 740 Railway Labor Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Empl. Ret. Inc. Security Act

### BANKRUPTCY
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

### PROPERTY RIGHTS
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

### SOCIAL SECURITY
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

### FEDERAL TAX SUITS
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

### OTHER STATUTES
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Sat TV
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 895 Freedom of Information Act
- ☐ 900Appeal of Fee Determination Under Equal Access to Justice
- ☐ 950 Constitutionality of State Statutes

## V. ORIGIN (Place an "X" in One Box Only)

- ☑ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. §1332(a)(1) ; 28 U.S.C. §1391(a)(2)

Brief description of cause:
DECLARATORY JUDGMENT OF PARTIES' RIGHTS UNDER INSURANCE POLICY

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ 75,000

CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☑ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):   JUDGE _____   DOCKET NUMBER _____

DATE  2/11/05

SIGNATURE OF ATTORNEY OF RECORD   Michael Theodore

FOR OFFICE USE ONLY

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

1.  Title of case (name of first party on each side only) _NORTH AMERICAN INDUSTRIES, INC_ FILED
    _CALIBER ONE INDEMNITY COMPANY_    IN CLERKS OFFICE

2.  Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet. (See
    local rule 40.1(a)(1)).    2005 FEB 15 P 12: 43

    U.S. DISTRICT COURT
    DISTRICT OF MASS

    - [ ]  I.     160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT.

    - [ ]  II.    195, 368, 400, 440, 441-444, 540, 550, 555, 625, 710, 720, 730,    *Also complete AO 120 or AO 121
                  740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.    for patent, trademark or copyright cases

    - [x]  III.   110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,
                  315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,    05  10333 MLW
                  380, 385, 450, 891.

    - [ ]  IV.    220, 422, 423, 430, 460, 510, 530, 610, 620, 630, 640, 650, 660,
                  690, 810, 861-865, 870, 871, 875, 900.

    - [ ]  V.     150, 152, 153.

3.  Title and number, if any, of related cases. (See local rule 40.1(g)). If more than one prior related case has been filed in
    this district please indicate the title and number of the first filed case in this court.

    _____

4.  Has a prior action between the same parties and based on the same claim ever been filed in this court?

                              YES [ ]    NO [x]

5.  Does the complaint in this case question the constitutionality of an act of congress affecting the public interest? (See
    28 USC §2403)

                              YES [ ]    NO [x]

    If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?

                              YES [ ]    NO [ ]

6.  Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?

                              YES [ ]    NO [x]

7.  Do all of the parties in this action, excluding governmental agencies of the united states and the Commonwealth of
    Massachusetts ("governmental agencies"), residing in Massachusetts reside in the same division? - (See Local Rule
    40.1(d)).

                              YES [ ]    NO [x]

    A.   If yes, in which division do all of the non-governmental parties reside?

         Eastern Division [ ]    Central Division [ ]    Western Division [ ]

    B.   If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental
         agencies, residing in Massachusetts reside?

         Eastern Division [x]    Central Division [ ]    Western Division [ ]

8.  If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court? (If
    yes, submit a separate sheet identifying the motions)

                              YES [ ]    NO [ ]

(PLEASE TYPE OR PRINT)

ATTORNEY'S NAME _Michael Theodore ; MICHAEL H. THEODORE_

ADDRESS _Cetrulo Dussi, LLC, 25 Burlington Mall Rd. 6th Fl. Burlington, MA 01803_

TELEPHONE NO. _781-494-0200 X 223_

(Coversheetlocal.wpd - 10/17/02)